UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
DEC 1 9 2012
U. S. DISTRICT COURT
E. DIST. OF MO.
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. |
| KEVIN BROWN, Defendant. | ) 4:12CR00468JCH ) ) ) ) ) |

## INDICTMENT

The Grand Jury charges that:

### A. INTRODUCTION AND BACKGROUND

At times relevant to this Indictment:

1. Brown, the defendant herein, resided within the Eastern District of Missouri.

2. Brown owned, operated, and was affiliated with several businesses which he operated in the Eastern District of Missouri and elsewhere. These businesses included Invision Investments of Columbus, LLC, Invision Investments of St. Louis, LLC, Invision Holdings, Renovo, LLC and Open Door Connections. However, Brown generally operated his business under the name "Invision Investments". Brown held himself out to be the president of Invision Investments.

3. Brown started Invision Investments (Invision) in 2004 purporting to buy homes, mostly foreclosed and distressed properties, for the purpose of rehabbing and then selling or

renting the properties for profit. At various times, Invison maintained offices in St. Charles and St. Peters, Missouri.

## B. SCHEME AND ARTIFICE TO DEFRAUD

4. Beginning in or about 2005 and continuing until at least 2009, in the Eastern District of Missouri,

### KEVIN BROWN

defendant herein, knowingly devised a scheme and artifice to defraud and to obtain money and property, by means of materially false and fraudulent pretenses, representations and promises, from investors located in the United States, which scheme and artifice is more fully described below.

5. In general, the scheme to defraud was an investment scheme in which Brown solicited individuals to invest in buying, rehabilitating, renting and reselling of residential properties in Ohio and Missouri. Brown falsely and fraudulently represented to investors that their money would be used to invest in real estate. Investors were paid returns on their investments using funds obtained from subsequent investors, rather than from returns on legitimate investments, i.e. the sale of real estate. Thus, the scheme was similar to a "ponzi" scheme and the scheme created the false appearance of a successful investment strategy. The "ponzi" use of new investor funds had the natural and intended effect of luring more new investors and enticing existing investors to make additional investments or to continue to roll over their "investment returns".

6. It was further part of the scheme that Brown prepared and distributed false and fraudulent investment statements to his investors showing their rolled over investment returns. Based on these statements, many investors were enticed to roll over their investments and keep

2

their monies invested with Invision Investments.

7. It was further part of the scheme to defraud that Brown falsely and fraudulently represented to investors and potential investors that Invision Investments had equity in property when in truth and fact, only a small amount of investor funds went into the purchase and/or rehabilitation of properties.

8. It was further part of the scheme to defraud that Brown encouraged some investors and potential investors to invest their retirement savings with Invision Investments. For some investors, Invision Investments used a company called Sterling Trust Company ("Sterling Trust") so that investors could invest Individual Retirement Account ("IRA") funds with Invision Investments.

9. It was further part of the scheme to defraud that Brown executed and provided promissory notes that falsely and fraudulently represented the rate of return investors were promised to receive. In some cases, the promissory notes falsely and fraudulently represented that interest payments would be payable without demand from investor. Brown falsely and fraudulently advised investors that their investments were guaranteed and backed by promissory notes.

10. It was further part of the scheme to defraud that Brown falsely and fraudulently represented that Invision Investments had purchased and/or sold enough properties to produce interest rates on investor returns as promised. In truth, Brown had not made such real estate purchases.

11. It was further part of the scheme to defraud that Brown falsely and fraudulently represented that interest payments to investors were from real estate transactions and

investments. In truth, the payments to investors were routinely made from other investors' principal and not from real estate transactions and investments.

12. It was further part of the scheme to defraud that Brown falsely and fraudulently represented to investors and potential investors that their principal was secured by a specific property. In some cases, Brown falsely and fraudulently represented that security was provided by placing investor's name on a particular deed to real property. In many cases, the investor's name was never placed on a mortgage or deed of a property, and if it was, the mortgage and deed was never filed.

13. It was further part of the scheme to defraud that Brown often fraudulently used investors' principal to pay himself, to pay personal expenses, and to invest in other non-related investment opportunities, rather than using such money to invest in real estate.

14. It was further part of the scheme to defraud that as funds from new investors were not sufficient to pay promised returns to earlier investors, Brown encouraged existing investors to extend the terms of their investments.

15. It was further part of the scheme to defraud that Brown routinely sent, and caused to be sent, emails to investors which were designed and intended to provide a false sense of security, including an email dated April 13, 2009.

16. It was further part of the scheme to defraud that Brown and Invision Investments took in millions of dollars of investor money, purchased only a small number of properties, and caused investors to lose more than $1.9 million in their investments.

17. As a result of Brown's scheme to defraud, many investors in the scheme lost all or a substantial percentage of the principal that they invested with Invision Investment.

## COUNTS ONE-TWO (WIRE FRAUD)

1.  The Grand Jury realleges and incorporates by reference herein paragraphs 1 through 17.

2.  E.M. is and was a minister for the United Pentecostal Church. E.M. and his wife, M.M., were living in the Eastern District of Missouri when they met with Kevin Brown to discuss investing in Invision Investments as a way to plan for their retirement.

3.  As part of the scheme, between in or around July 2006 and June 2008, E.M. and M.M. invested a substantial portion of their retirement funds. As a result of the scheme, between July 2006 and June 2008, E.M. and M.M. transferred more than $94,000 from their retirement funds, using Sterling Trust, to Invision Investments. In return, E.M. and M.M. were issued and received promissory notes.

4.  Sterling Trust used the banking services of United Western Bank, of Colorado.

5.  As part of the scheme, on or about June 6, 2008, E.M. and M.M. transferred $17,000 to Invision Investments' account number **6707.

6.  As part of the scheme, on or about June 11, 2008, E.M. and M.M. transferred $59,000 to Invision Investments' account number **6707.

7.  As part of the scheme, E.M.'s and M.M.'s investments were commingled in account number **6707, and thereafter used to pay personal expenses of Brown, other investors, and day to day living expenses.

8.  On or about the dates listed below, in the Eastern District of Missouri and elsewhere,

**KEVIN BROWN,**

the defendant herein, having voluntarily and intentionally devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses,

5

representations, and promises, and for the purpose of executing the scheme and in attempting to do so, did knowingly transmit and cause to be transmitted in interstate commerce by wire certain writings, signs, signals, pictures and sounds, namely the following wire transfers from a Sterling Trust account at United Western Bank to Invision Investments' account at National City Bank.

| COUNT | DATE | DESCRIPTION OF USE OF WIRE |
|---|---|---|
| ONE | 6/6/2008 | A wire transfer of $17,000.00 from E.M. and M.M.'s account at United Western Bank to Invision Investments' account at National City, which transfer was routed through the Federal Reserve Bank in New Jersey by means of the Fedwire system |
| TWO | 6/11/2008 | A wire transfer of $59,000.00 from E.M. and M.M.'s account at United Western Bank to Invision Investments' account at National City, which transfer was routed through the Federal Reserve Bank in New Jersey by means of the Fedwire system |

In violation of Title 18, United States Code, Sections 1343.

## COUNT THREE (WIRE FRAUD)

1. The Grand Jury realleges and incorporates by reference herein paragraphs 1 through 17.

2. R.P. is and was a missionary. At the time, R.P. was residing in Beaumont, Texas.

3. As part of the scheme, between in or around December 2007 and January 2008, R.P. invested a substantial portion of his retirement funds. As a result of the scheme, in January 2008, R.P. transferred $200,000 from his retirement funds, using Sterling Trust, to Invision Investments. In return, R.P. was issued and received promissory notes.

4. Sterling Trust used the banking services of United Western Bank, of Colorado.

5. As part of the scheme, on or about January 8, 2008, R.P. transferred $200,000 to Invision Investment's account number **6707.

6. As part of the scheme, R.P.'s investment was commingled in account number **6707, and thereafter used to pay personal expenses of Brown, other investors, and to invest in other non-related investments.

7. On or about the date listed below, in the Eastern District of Missouri and elsewhere,

### KEVIN BROWN,

the defendant herein, having voluntarily and intentionally devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and in attempting to do so, did knowingly transmit and cause to be transmitted in interstate commerce by wire certain writings, signs, signals, pictures and sounds, namely the following wire transfers from a Sterling Trust account at United Western Bank to Invision Investments' account at National City Bank.

| COUNT | DATE | DESCRIPTION OF USE OF WIRE |
|---|---|---|
| THREE | 1/8/2008 | A wire transfer of $200,000 from R.P's account at United Western Bank to Invision Investments' account at National City, which transfer was routed through the Federal Reserve Bank in New Jersey by means of the Fedwire system |

In violation of Title 18, United States Code, Sections 1343.

### COUNT FOUR (WIRE FRAUD)

1. The Grand Jury realleges and incorporates by reference herein paragraphs 1 through 17.

2. T.O. is and was a missionary. At the time, T.O. was residing outside the United States.

3. As part of the scheme, T.O. invested a substantial portion of his retirement funds. As a result of the scheme, T.O. made an investment of $140,000 from his retirement. In return, T.O. was issued and received a promissory note.

4. As part of the scheme, on or about April 8, 2009, T.O. sent an e-mail from his gmail account to Brown at kbrown@invisioninvest.com. The e-mail from T.O. requested that Brown provide information concerning the properties of which Invision Investments was holding for its investors.

5. As part of the scheme, on or about April 13, 2009, Brown sent an e-mail from his account at kbrown@invisioninvest.com to T.O.'s gmail account. The e-mail from Brown listed seven properties and their sales value of which Invision Investments was holding for investors. As part of the scheme, Brown had quit claimed houses from the list to other investors prior to the e-mail to T.O., and therefore, the houses were not owned or held by Invision Investments.

6. As part of the scheme, T.O. did not contact a lawyer and did not demand the return of his investment funds.

7. On or about the date listed below, in the Eastern District of Missouri and elsewhere,

**KEVIN BROWN,**

the defendant herein, having voluntarily and intentionally devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and in attempting to do so, did knowingly transmit and cause to be transmitted in interstate commerce by wire certain writings, signs, signals, pictures and sounds, namely the following e-mail from Brown.

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| **FOUR** | 04/13/2009 | E-mail from kbrown@invisioninvest.com, dated April 13, 2009 at 9:44 PM. |

In violation of Title 18, United States Code, Sections 1343.

                                                 A TRUE BILL.


_____
FOREPERSON


RICHARD G. CALLAHAN
United States Attorney


_____
Dianna R. Collins #59641MO
Assistant United States Attorney